# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

MARCY REEANN AYERS, )
                                                  )
                    Plaintiff, )
                                                  )
                              v. )          Case No. CIV-16-341-SPS
                                                  )
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration, [1] )
                                                  )
                    Defendant. )

## OPINION AND ORDER

The claimant Marcy Reeann Ayers requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born May 17, 1981, and was thirty-three years old at the time of the administrative hearing (Tr. 231, 238). She has a high school education, nurse aid training, and no past relevant work (Tr. 32, 272). The claimant alleges she has been unable to work since January 19, 2010, due to osteogenesis imperfecta, blue sclera, multiple fractures, seizures, attention deficit hyperactivity disorder ("ADHD"), and psychological issues (Tr. 238, 271).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on August 23, 2013, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on October 31, 2013 (Tr. 231-43). Her applications were denied. ALJ James Bentley held an administrative hearing and determined that the claimant was not disabled in a written opinion dated April 3, 2015 (Tr. 14-34). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the additional limitations of only occasional balancing, kneeling, crouching, and crawling; avoiding unprotected heights and dangerous moving machinery; and required a sit/stand option defined as a temporary change in position from sitting to standing and vice versa with no more than one change in position every twenty minutes and without leaving the workstation so as to not diminish pace or production (Tr. 19). He further imposed the psychologically-based limitations that the claimant could perform simple tasks with routine supervision, and could have occasional contact with co-workers and supervisors, but no work-related contact with the general public (Tr. 19). The ALJ then concluded that the claimant was not disabled because there was work she could perform in the regional and national economies, *e. g.*, inspector/packer, small product assembler, and electrical accessories assembler (Tr. 33).

## Review

The claimant contends that the ALJ erred by failing to properly evaluate: (i) the opinion of consultative examiner Dr. Shalom Palacio-Hollman; and (ii) the opinion of counselor Ivora Sensibaugh. The Court agrees with the claimant that the ALJ failed to properly evaluate the evidence of record, and the decision of the Commissioner must therefore be reversed.

-4-

The ALJ found that the claimant had the severe impairments of anxiety, depression, seizure disorder, methamphetamine abuse in remission by report, hip pain, and back pain (Tr. 16). The medical evidence related to the claimant's mental impairments reveals that she presented for mental health-related emergent care on four occasions (Tr. 325, 1176, 1565, 1622). On August 25, 2008, the claimant presented to the Latimer County Hospital Emergency Room ("LCER") for anxiety (Tr. 325). Dr. Richard Valbuena noted she was tearful, lying in the fetal position, and that her pupils were dilated; diagnosed her with anxiety problems; and recommended she follow-up with Carl Albert Community Mental Health Center the next day (Tr. 325-27). A drug screen performed that day was positive for amphetamine, benzodiazepines, methamphetamine, and opiates (Tr. 327). On December 13, 2008, the claimant presented to LCER and reported that she was having a panic attack (Tr. 1176). Dr. David Campbell noted the claimant was rambling, restless, "changing her story," and nonsensical at times (Tr. 1176). He also noted that her urinalysis was positive for amphetamine, methamphetamine, cocaine, methadone, and benzodiazepines (Tr. 1176). Dr. Campbell diagnosed the claimant with polysubstance abuse and transferred her to McAlester Regional Health Center ("MRHC"), where she received two days of inpatient treatment for drug overdose (Tr. 1176, 1565-1610). On April 1, 2009, the claimant presented to the MRHC Emergency Room for stress and reported feeling as though she had a seizure (Tr. 1622-23). Dr. Johnny Zellmer noted the claimant's mood, affect, judgment and insight were normal, her memory was intact, and that she was alert and oriented (Tr. 1622). He diagnosed her with acute anxiety (Tr. 1623). On October 24, 2012, the

claimant presented to the MRHC Emergency Room for anxiety, but left without being seen (Tr. 1279-80).

On August 18, 2013, the claimant was transported to MRHC via ambulance after experiencing a seizure (Tr. 1381-92). A CT scan of her brain performed that day was unremarkable (Tr. 1390). The claimant's discharge diagnoses included, *inter alia*, seizure disorder, polysubstance abuse, and depression/anxiety (Tr. 1384).

The claimant received inpatient treatment for respiratory complications stemming from a drug overdose in November 2013 (Tr. 1719-75). During her course of treatment, a behavioral assessment indicated that the claimant accidentally overdosed (Tr. 1732). A CT scan of the claimant's brain dated November 21, 2013, was unremarkable (Tr. 1772). Although the claimant's discharge diagnoses did not include anxiety or depression, her discharge prescriptions included, *inter alia,* a downward titrating benzodiazepine and an anti-depressant (Tr. 1732).

The claimant reported that Dr. Gerald Rana managed her psychotropic medications from 2012 through August 2013, but the record does not contain any treatment notes from Dr. Rana (Tr. 273, 275, 278). The claimant presented to Dr. Wellie Adlaon for medication management on two occasions (Tr. 1781, 1790). At her November 2014 appointment, she was "doing ok," compliant with her medication, and experienced no side effects (Tr. 1781). Dr. Adlaon noted the claimant's speech and thought content were appropriate; and that her mood, concentration, and psychomotor activity were normal (Tr. 1781). At her February 2015 appointment, the claimant

reported audio and visual hallucinations (Tr. 1790). Dr. Adlaon's treatment note that day reflects only a medication modification (Tr. 1790).

On October 24, 2014, social worker Ivora Sensibaugh completed a Medical Source Statement ("MSS") wherein she reported that the claimant was diagnosed with an adjustment disorder with mixed anxiety and chronic depressed mood (Tr. 1778). Ms. Sensibaugh stated that the claimant was currently oriented with an agitated affect, anxious mood, loose process, poor judgment, fair insight, and atypical speech (increased to slowed with stammering) (Tr. 1778). She further indicated that the claimant had poor concentration, excessive anxiety, difficulty making decisions, and feelings of hopelessness (Tr. 1778). As to the claimant's anxiety and depression, she reported the claimant experienced symptoms and isolated on a daily basis (Tr. 1778). Ms. Sensibaugh opined that the claimant was unable to be around people for moderate or long periods of time (Tr. 1778).

Shalom Palacio-Hollman, Psy.D., conducted a psychological consultative examination on February 26, 2015 (Tr. 1786-89). She observed that the claimant was alert and fully oriented, had a euthymic mood and congruent affect, and made abnormal movements including frequent adjustment in her seat, restlessness, and fidgeting (Tr. 1788-89). Dr. Palacio-Hollman indicated that the claimant's attention and concentration were adequate, noting her self-report of problems maintaining focus; her thought processes were linear, logical, and goal directed; her speech was fluent and regular in rhythm, rate, volume and tone; and that there was no evidence of thought disorder or hallucinations (Tr. 1788). She further indicated that the claimant's long and

short term memory appeared impaired at times, and that her insight, judgment, and impulse control were poor (Tr. 1788-89). Noting the claimant's own reports of inattention, hyperactivity, persistent mood symptoms, agitation, and anxiety in the workplace, Dr. Palacio-Hollman concluded that the claimant was severely functionally impaired as to employment (Tr. 1789). Dr. Palacio-Hollman diagnosed the claimant with posttraumatic stress disorder, ADHD, bipolar disorder, and polysubstance dependence (in remission by report) (Tr. 1789). She opined that the claimant's functional ability at that time was not was compatible with gainful employment or participation in academic activities (Tr. 1789).

At the administrative hearing, the claimant testified that she cannot work full-time because she is unable to stay focused and sit or stand for long periods of time (Tr. 47). She further testified that she recently began experiencing audio and visual hallucinations, and suicidal thoughts (Tr. 53-54, 58-59). Regarding daily activities, the claimant stated she does household chores in two or three-minute increments due to her ADHD (Tr. 62-63). In response to the ALJ's question as to whether she was productive at work, the claimant stated "As I am capable of being. I try. I want to think I am. And I seem to get . . . things done . . . but they are just little things . . ." (Tr. 65). She further stated she cannot maintain pace at work because of her inability to stay focused (Tr. 65).

In his written opinion, the ALJ summarized the claimant's testimony and the medical records. In discussing the opinion evidence, the ALJ gave little weight to Dr. Palacio-Hollman's opinion because she saw the claimant only once, was not a treating physician, and because her opinion was produced in the context of generating evidence

for an appeal rather than in an attempt to obtain treatment (Tr. 28, 30). The ALJ also gave little weight to Ms. Sensibaugh's opinion, finding she only described the claimant's symptoms, and thus, did not specifically discuss any mental limitations (Tr. 32). Additionally, the ALJ noted the state agency psychologists concluded that there was insufficient evidence to determine the severity of the claimant's condition because she did not return her activities of daily living form or respond to numerous attempts to obtain such information (Tr. 27-28). Nonetheless, he gave partial weight to their opinions, stating ". . . the conclusions determined by the doctor [s] support a finding of 'not disabled'." (Tr. 27-28).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors are: (i) the length of treatment relationship and frequency of examination; (ii) nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d

1297, 1300-01 (10th Cir. 2003), *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Rather than apply these factors, the ALJ rejected Dr. Palacio-Hollman's report, in part, because he concluded it was obtained solely to generate evidence for the claimant's pursuit of disability benefits. "This type of reasoning smacks of the old 'treating physician's report appears to have been prepared as an accommodation to a patient' statement that has been roundly rejected as a basis for reducing the controlling weight normally afforded a treating physician's opinion." *Overstreet v. Colvin,* No. CIV-15-368-RAW-KEW, 2016 WL 5417815, at *4 (E.D. Okla. Aug. 15, 2016), *citing Miller v. Chater*, 99 F.3d. 972, 976 (10th Cir. 1996) [internal citation omitted].

Additionally, Social Security regulations provide for the proper consideration of "other source" opinions such as the one provided by Ms. Sensibaugh. *See, e. g., Frantz v. Astrue,* 509 F.3d 1299, 1302 (10th Cir. 2007) (noting that other source opinions should be evaluated with the relevant evidence "on key issues such as impairment severity and functional effects" under the factors in 20 C.F.R. §§ 404.1527, 416.927), *quoting* Soc. Sec. Rul. 06-03p, 2006 WL 2329939 at *3, *6 (Aug. 9, 2006) ("[T]he adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."). The factors for evaluating opinion evidence from "other sources" include: (i) the length of the relationship and frequency of contact; (ii) whether the opinion is consistent with other

evidence; (iii) the extent the source provides relevant supporting evidence; (iv) how well the source's opinion is explained; (v) whether claimant's impairment is related to a source's specialty or area of expertise; and (vi) any other supporting or refuting factors. *See* Soc. Sec. Rul. 06–03p, at *4–5; 20 C.F.R. § 404.1527(c), 416.927(c). The ALJ noted at the outset of step four that he considered the opinion evidence in accordance with SSR 06-03p, but made no reference to these factors in connection with Ms. Sensibaugh's MSS, and it is therefore unclear whether he considered any of them. *See, e. g., Anderson v. Astrue*, 319 Fed. Appx. 712, 718 (10th Cir. 2009) ("Although the ALJ's decision need not include an *explicit discussion* of each factor, the record must reflect that the ALJ *considered* every factor in the weight calculation."). Instead, the ALJ simply noted that Ms. Sensibaugh only described the claimant's symptoms. In making such a finding, the ALJ completely ignored Ms. Sensibaugh's statements as to the claimant's diagnoses, their treatment relationship, and her observations of the claimant. *See, e. g., Clifton*, 79 F.3d at 1010 ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.") *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-1395 (9th Cir. 1984). This analysis was particularly important here because Ms. Sensibaugh was the claimant's treating counselor for the eight months immediately preceding her MSS, and her opinion is the only one in the record from a treating provider, albeit a treating "other source" provider.

Because the ALJ failed to properly consider the consultative and "other source" opinions, the decision of the Commissioner must be reversed and the case remanded to

the ALJ for further analysis. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 15th day of September, 2017.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**